IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERMEER MANUFACTURING COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DEERE & COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. 04-1343-SLR <br> ) <br> ) <br> ) <br> ) |

Steven J. Balick, Esquire, and John G. Day, Esquire, of Ashby & Geddes, Wilmington, Delaware.  Counsel for Plaintiff.  Of Counsel: Jon R. Trembath, Esquire, and Rachel K. Zimmerman, Esquire of Merchant & Gould, Minneapolis, Minnesota.

Karen Jacobs Louden, Esquire, and Benjamin Schaldweiler, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for Defendant.  Of Counsel:  Steven C. Schroer, Esquire, Karl R. Fink, Esquire, Mark W. Hetzler, Esquire, Mark A. Borsos, Esquire, and Christine A. Abuel, Esquire, of Fitch, Even, Tabin & Flannery, Chicago, Illinois.

**MEMORANDUM OPINION**

Dated: August 3, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Pending before the court is a motion filed by defendant Deere & Company ("Deere") to dismiss the case at bar for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, to realign the parties. (D.I. 27) Plaintiff Vermeer Manufacturing Company ("Vermeer") has sued Deere for a declaratory judgment that U.S. Patent No. 5,394,682 ("the '682 patent") is invalid and that a round baler made by Vermeer does not infringe on the '682 patent. (D.I. 31) Deere asserts that there is no justiciable case or controversy between the parties relating to the '682 patent and, therefore, the case should be dismissed. (D.I. 27)

For the reasons that follow, the motion to dismiss shall be granted.

## II. BACKGROUND

The parties started communicating concerning the '682 patent on April 5, 2002.[1] (Id. at Ex. B) On April 18, 2002, Vermeer offered to license claim 1 of the '682 patent from Deere. (Id.) The two parties discussed the '682 patent again on April 29, 2002. (Id.) On May 17, 2002, Deere indicated willingness to license claim 1 of the '682 patent.[2] (Id.) By a letter dated

---

[1] Vermeer sent some 1990 vintage stiff tines to Deere regarding the '682 patent. (D.I. 27 at Ex. B)

[2] Vermeer and Deere held telephone conferences on April 18, April 29 and May 17, 2002. (D.I. 27 at Ex. B)

June 27, 2002, Deere repeated its willingness to license Claim 1 of the '682 patent. (Id.) Vermeer, in a letter dated December 12, 2002, discussed prior art affidavits relating to claims 1, 7, 8, and 9 of the '682 patent. (Id.) On March 3, 2003, the two parties considered a "trade situation."[3] (Id.) Vermeer's letter, dated June 10, 2003, offered twenty thousand dollars for a non-exclusive license of claims 1, 7, 8, and 9 of the '682 patent and proposed a license for the '949 patent with a royalty rate of twenty dollars per baler for the future and a twenty thousand dollars lump sum payment for past infringement.[4] (Id.) By a letter dated November 26, 2003, Deere rejected Vermeer's original offer and proposed a counteroffer. (Id. at Ex. C) The two parties met on December 30, 2003 and discussed the '682 and '949 patents. (Id. at Ex. D) Vermeer's letter, dated January 26, 2004, summarized the December 30 meeting and made a counteroffer for the '682 and '949 patents. (Id.)

In a letter dated June 22, 2004, directed to general counsel for Vermeer, patent counsel for Deere stated the following:

Deere is aware of Vermeer's recent introduction of a

---

[3]The parties also were involved in negotiations for Vermeer's U.S. Patent No. 4,919,949 ("the '949 patent") regarding baler wedges. (D.I. 27 at Ex. B) This telephone conference resulted in a proposal for cross-licensing the '682 and '949 patents. (Id.)

[4]Vermeer's June 10, 2003, letter summarized all exchanges between the parties regarding the '682 and '949 patents. (D.I. 27 at Ex. B)

2

> baler which is equipped with a pick-up that appears to infringe Deere's '682 patent. In the absence of more compelling evidence to establish the invalidity of claims thought infringed, Deere will enforce its patent rights.
>
> If this letter seems to have a threatening tone, it is not intended. I am just being matter-of-fact and candid concerning my client's desire to enforce its rights in the '682 patent just as you were relative to Vermeer's '949 patent.

(Id. at Ex. E) On August 31, 2004 Vermeer responded to the June 22 letter and stated:

> We are in receipt of your letter of June 22, 2004, wherein Deere rejected Vermeer's offer to license the above referenced patent conditioned upon Deere agreeing to submit the issues of Vermeer's '949 patent to arbitration . . . . A takeaway from that meeting is . . . [the] understanding that Deere believes they rejected Vermeer's $10,000 offer to license via your letter of June 22, 2004 and desires a counteroffer from Vermeer if Vermeer is so inclined.
>
> To that end, I . . . offer a lump sum payment of $75,000 for a paid-up, non-exclusive, non-transferrable worldwide license under Claims 1, 7, 8 and 9 of the Deere '682 patent . . . .
>
> Given the closing of your letter of June 22, 2004, I must ask you to respond quickly to the above referenced offer . . . . We would prefer a response before Labor Day, if at all possible, but in no event later than September 8, 2004.

(Id. 27 at Ex. F) Vermeer's general counsel, Robert R. Smith ("Smith"), telephoned Deere's assistant general patent counsel, Jimmie R. Oaks ("Oaks"), on September 14, 2002. (D.I. 32 at 4) Smith left a voicemail stating that he interpreted Deere's failure to respond to the August 31 letter as a rejection and asked Oaks to return his call if his assumption was in error.

3

(Id.)  Oaks did not respond to the September 14 telephone call. (Id.)  On October 7, 2004, Vermeer filed a Declaratory Judgment action and left a courtesy copy of the complaint with Oaks. (D.I. 27 at Ex. G)  The next day Vermeer hand delivered a letter to Oaks.  (Id.)  The letter stated that it was "in the nature of possible settlement discussions" and that "Vermeer would be amenable to listening to any Deere counterproposals . . . before . . . proceed[ing] with service of the complaint and institution of the lawsuit."  (D.I. 27 at Ex. G)  The complaint was served on Deere on October 12, 2004.  (D.I. 31 at 6)

III.  STANDARD OF REVIEW

A declaratory judgment action may be brought in order to resolve an "actual controversy" between "interested" parties.  28 U.S.C. § 2201.  As explained by the Federal Circuit in BP Chemicals Limited v. Union Carbide Corp., 4 F.3d 975 (Fed. Cir. 1993):

> The purpose of the [Declaratory Judgment] Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.  It accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action.  However, the controversy must be actual, not hypothetical or of uncertain prospective occurrence.  The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings – all raised in this case.

Id. at 977.  In reaching its conclusion, the court must apply a

totality of the circumstances standard. <u>C.R. Bard, Inc. v. Schwartz</u>, 716 F.2d 874, 880 (fed. Cir. 1983). Recognizing that "[t]here is no simple rule that addresses all shades of relationships between disputants," the Federal Circuit has developed

> a pragmatic two-part test for determining declaratory justiciability. There must be both (1) an explicit threat or another action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

<u>Id.</u> at 978. In the present motion, only the first prong of this test is at issue. The court, therefore, confines its analysis to whether Deere's conduct placed Vermeer in reasonable apprehension of an infringement suit.

Although there are countless permutations of competitive relations, the Federal Circuit has given some guidance as to what conduct constitutes commercial activity that does **not** meet the test for a declaratory judgment action. Certainly, "more is required than the existence of an adversely held patent." <u>Id.</u> Indeed, a "patentee's statement that it intend[s] to enforce [its] patent [has been] held not to create a reasonable apprehension of suit." <u>Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha</u>, 57 F.3d 1051, 1054 (Fed. Cir. 1995)(discussing <u>Shell Oil Co. V. Amoco Corp.</u>, 970 F.2d 885, 889 (Fed. Cir. 1992)). Likewise, "[t]he offer of a patent license does not

5

create an actual controversy . . . . When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." Phillips Plastics Corp., 57 F.3d at 1053. As a general principle, then, the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met "when a patentee does nothing more than exercise its lawful commercial prerogatives and, in so doing, puts a competitor in the position of having to choose between abandoning a particular business venture or bringing matters to a head by engaging in arguably infringing activity." Cygnus Therapeutics Sys. v. ALZA Corp., 92 F.3d 1153, 1160 (Fed. Cir. 1996).

On the other hand, the test for finding a "controversy" is a "pragmatic one and cannot turn on whether the parties used polite terms in dealing with one another." EMC Corp. V. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996). "[I]n light of the subtleties in lawyer language," Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988), the Federal Circuit has not required express charges of infringement or similar "magic words" to create a justiciable controversy. Id. Courts must look to the "realities of business life" so that a patentee may not succeed in extra-judicial patent enforcement by employing ambiguous "lawyerisms" and "scare-the-customer-and-run tactics." Id. at 735-36.

IV. DISCUSSION

Vermeer contends that Deere created a reasonable apprehension of suit through the June 22 letter by stating: 1)"Deere will enforce its patent rights", and 2)"[Vermeer's baler] appears to infringe Deere's '682 patent." (D.I. 31 at 9; D.I. 32 at Ex. A)  Consistent with Federal Circuit authority, Deere's declaration that it "will enforce its patent rights" does not create a reasonable apprehension of suit. See Phillips Plastics Corp., 57 F.3d at 1054.  Further, the "appears to infringe" statement is similar to language used in Dupont Dow and does not create a reasonable apprehension of suit.  In Dupont Dow Elastomers, L.L.C. v. Greene Tweed of Delaware, Inc., the court held that the language "may be infringing" did not create a reasonable apprehension of suit.  148 F. Supp.2d 412 (D. Del. 2001).  Here, the language "appears to infringe" is similar to Dupont Dow's "may be infringing" and, therefore, does not create a reasonable apprehension of suit.  (Id.)  Additionally, Deere lessened any potential threat by closing the June 22 letter with: "If this letter seems to have a threatening tone, it is not intended."  (D.I. 27 at Ex. E)

Although Deere never expressly charged Vermeer with infringement, lack of an express threat is not dispositive of whether an actual controversy exists. See Dupont Dow, 148 F.Supp.2d at 415.  Normally, a litigation controversy does not

7

arise until negotiations have ended. See Phillips Plastics Corp., 57 F.3d at 1053. Here, negotiations had not ended or broken down. Vermeer contends that Deere's lack of response to the August 31, 2004 letter and the September 14, 2004 phone call demonstrate that Deere had ended negotiations.[5] However, negotiations started in April 2002 and continued over the next two years. (D.I. 27 at Exs. B - F) The parties often waited for a month to respond to each other and sometimes went almost six months before corresponding. Moreover, Deere, in the June 22, 2004 letter, requested more detailed information about the invalidity allegation and rejected Vermeer's licensing offer. (D.I. 27 at Ex. B) By a letter dated August 31, 2004, Vermeer proposed a counter-offer to the June 22 letter. (Id. at Ex. F) Additionally, Vermeer's October 8 letter informed Deere that "[it] would be amenable to listening to any Deere counterproposals to resolving this matter before . . . proceed[ing] with service of the Complaint and institution of the lawsuit." (Id. at Ex. G) The record, therefore, demonstrates that negotiations were still ongoing when suit was filed.

In the absence of either an express threat to sue, a pattern of suing on the '682 patent, or conduct which has interfered with Vermeer's customer relations, the court concludes that Vermeer

---

[5] Vermeer cites no precedent where silence indicates negotiations have ended. (D.I. 31 at 10)

has not demonstrated a reasonable apprehension of suit.[6]  See DuPont Dow, 148 F.Supp.2d at 415.

## V. CONCLUSION

For the reasons stated, the court concludes that it does not have subject matter jurisdiction to entertain Vermeer's declaratory judgment action.  Therefore, the court shall grant Deere's motion to dismiss.

---

[6]Neither party presented evidence that related to a pattern of suing.